UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARTENI OSTONI,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No.  2:22-cv-1438-KJN<br><br>ORDER<br><br>(ECF Nos. 15, 17.) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in relying solely on non-examining physician's opinions and crafting plaintiff's residual functional capacity.  Plaintiff also contends the ALJ inappropriately resolved her subjective symptom testimony and inexplicably disregarded that this is both a Title II and Title XVI case.  Plaintiff seeks a remand for further proceedings.  The Commissioner opposed, and filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, plaintiff's motion is GRANTED; the Commissioner's cross-motion is DENIED, and the case is REMANDED for further proceedings.

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and reassigned the undersigned on the consent of all parties.  (ECF Nos. 6, 8, 9.)

1

## I. RELEVANT LAW

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3). An Administrative Law Judge ("ALJ") is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld." Id. Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

2

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In January of 2020, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of September 9, 2019. (Administrative Transcript ("AT") 167-68.) Plaintiff claimed disability due to "Right Shoulder Pain, Neck Pain, Back Pain, Right Arm Pain, Cholesterol, Stomach Ache, Knee Pain, Insomnia, [and] Weakness in Arms." (See AT 52.) Plaintiff's Title XVI application was denied initially and upon reconsideration, and she sought review with an ALJ. (See AT 52-71; 89-98.) Plaintiff appeared alongside a representative at a March 2021 remote hearing, where she testified about her conditions and where a vocational expert testified about available jobs for those with similar limitations. (AT 31-51.)

On July 9, 2021 the ALJ issued a decision determining plaintiff was not disabled. (AT 15-26.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since January 14, 2020, the application date. (AT 18.) At step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; right shoulder impingement; bilateral patellofemoral syndrome; and obesity. (Id.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) Regarding plaintiff's physical limitations, the ALJ considered Listings 1.15 (compromised nerve roots), 1.16 (lumbar spinal stenosis), and 1.18 (abnormality of a major joint(s) in any extremity). (AT 18-19.) The ALJ found the record lacked medical documentation to show plaintiff had the requisite signs for any of these conditions. (Id.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work as per 20 C.F.R. § 416.967(b), finding plaintiff capable of:

> Lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting[,] standing[, and] walking for six hours; pushing or pulling as much as she can lift and carry; only occasionally reaching overhead to the right; climbing ramps[,] stairs[,] ladders, ropes, or scaffolds occasionally; balance[ing] frequently; stoop[ing], kneel[ing], crouch[ing], or crawl[ing] occasionally; work[ing] at unprotected heights [or] with moving mechanical parts frequently; and [being exposed] to extreme cold [] and vibrations frequently.

(AT 19.) In crafting this RFC, the ALJ stated he considered plaintiff's symptom testimony, the

objective medical evidence, the prior administrative medical findings ("PAMFs"), and other evidence. (AT 20.) The decision summarizes plaintiff's symptom testimony (AT 20), the medical evidence in the record stretching from September of 2016 through February of 2021 (AT 21-24), and two medical opinions expressed in the winter 2020 PAMFs (AT 24.) The ALJ found each of the PAMFs to be "very persuasive" as consistent with "a conservative treatment course, rather benign diagnostic imaging, and a lack of any findings as to ongoing or significant neurological defects." (Id.)

Based on the RFC, the ALJ determined plaintiff was capable of performing past relevant work as a hairdresser (SVP 6, light work) as generally and actually performed; thus, the ALJ found plaintiff was not disabled. (AT 25.) The Appeals Council rejected plaintiff's appeal. (AT 1-3.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 17, 20.)

### III.   ISSUES PRESENTED

Plaintiff contends the ALJ erred in relying solely on non-examining physician's opinions and in formulating the residual functional capacity. Plaintiff notes the PAMFs were issued in the winter of 2020, subsequent records demonstrated her condition had worsened since that time, and the ALJ appears to ignore this fact. Plaintiff also disputes the ALJ's resolution of her subjective symptom testimony, and argues the ALJ erred in disregarding that this is a case arising not just under Title XVI, but under Title II as well. Plaintiff seeks a remand for further proceedings. (ECF No. 15.)

The Commissioner argues the ALJ properly relied on the non-examining physicians opinions and properly crafted the RFC, given the substantial evidence cited in the record. The Commissioner also argues the ALJ properly resolved plaintiff's symptom testimony. Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should result in affirmance. (ECF No. 17.)

Plaintiff notes in reply that the Commissioner appears to have conceded her point about the Title II/Title XVI issue, but has also noted this error could be harmless if no other error is apparent. (ECF No. 20.)

## IV. DISCUSSION

### A. Probative Medical Evidence, Outdated PAMFs, the ALJ's Opinion, and the Step Two, Step Three, and RFC Determinations

**Legal Standards – Medical Opinions and Persuasiveness**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or [PAMF], including those from [plaintiff's] medical sources." See 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." Id. In determining how "persuasive" the opinions of medical sources and PAMFs are, an ALJ must consider the following factors: "supportability, consistency, treatment relationship, specialization, and "other factors." Id. at sub. (b) and (c)(1)-(5).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. Id. at sub. (a)-(b). The ALJ must explain how the supportability and consistency factors were considered, as they are "the most important factors." Id. at sub. (b)(2). Supportability is "the extent to which a medical source supports the medical opinion by explaining relevant objective medical evidence." Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022). Consistency is "the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." Id. at sub. (b)(2)-(3).

An ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) and 416.920c(b)(1) ("source-level articulation"). "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

**Analysis**

Plaintiff argues various points of error in her briefing, attacking the ALJ's reliance on the non-examining physicians' opinions, his minimizing of probative evidence supporting a disability claim, his findings at steps two and three, his failure to explain the formulation of the RFC, and his reliance on the VE's testimony in relation to that RFC. The court finds these arguments can be distilled down to a single issue: whether the ALJ inappropriately cherry-picked the record to craft a result. Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). The undersigned finds this is the case here.

To refresh, the ALJ found plaintiff's degenerative disc disease of the lumbar and cervical spine, right shoulder impingement, and bilateral patellofemoral syndrome to be severe. Regarding her spine, the ALJ stated there was "no evidence that the nerve roots have been compromised in a manner causing radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension, or compression." (AT 18.) The ALJ also found "no indication" the spinal stenosis caused "neurological compromise with symptoms of pain in one or both lower extremities, sensory loss in one or both lower extremities, or neurogenic claudication." (Id.) Regarding her shoulder impairment, the ALJ found plaintiff (assumedly via the evidence in the record) did not have "the inability to use at least one upper extremity" to perform work-related activities. (AT 19.) Later, in the RFC section, the ALJ discussed medical records that align with these conclusions. (See AT 21-23 (discussing medical records from May of 2019 through February of 2021).) The ALJ then wraps up his RFC discussion by finding the opinions in the PAMFs to be "very persuasive" because of the two non-examining state-agency consultants' familiarity with the disability system and because of the opinions' consistency with the evidence in the record. (AT 24.)

Despite all this, the ALJ appears to have minimized, without proper explanation, evidence probative of a disability finding. Most probative are records generated in the months before the hearing indicating plaintiff underwent a cervical MRI that revealed "moderated to severe stenosis c5-6." (AT 346 (emphasis added); see also AT 350 ("Impression: C5-6 spondylosis results in

1 severe right and moderately severe left foraminal narrowing. Mild to moderate canal stenosis.")
2 (emphasis added).)  The ALJ notes the existence of this evidence in the decision, but simply
3 concludes the physical exam findings around that time were "otherwise grossly unremarkable."
4 (AT 23.)  The ALJ then determines the opinions expressed in the PAMFs were consistent with the
5 record "at the time in which they were offered" as well as "subsequently received evidence
6 showing a conservative treatment course, rather benign diagnostic imaging, and a lack of any
7 findings as to ongoing or significant neurological defects."  (AT 24.)

8       The problem lies in the ALJ's conclusion regarding the "subsequently received evidence,"
9 as the undersigned cannot reconcile, from the text of the decision, how "severe" findings can also
10 be "rather benign" or a "lack of any findings."  (Cf. AT 350, with AT 24.)  Further, the ALJ's
11 conclusion ignores the fact that plaintiff's course of conservative treatment (assuming the truth of
12 this, arguendo) would not be wholly evident from the time of the imaging (January 2021) through
13 the hearing and decision (March/July 2021).  The only conclusion the court draws from these
14 seemingly contradictory assertions is that the ALJ appears to be substituting his own judgment on
15 the medical evidence and applying conclusory labels in order to craft a result.  This is
16 impermissible, and requires further explanation supported by substantial evidence.  Holohan, 246
17 F.3d at 1207; see also, e.g., Pilgreen v. Berryhill, 757 F. App'x 618, 619 (9th Cir. 2019) (noting
18 that ALJ's are not free to substitute their own lay opinions on the medical evidence); Eilrich v.
19 Colvin, No. 2:09-CV-2697-CKD, 2016 WL 792674, at *3 (E.D. Cal. Mar. 1, 2016) (finding the
20 ALJ substituted his own opinion on the effect of medical evidence in the record that arose after
21 the medical opinions were issued, and remanding for the ALJ to seek an updated opinion from a
22 medical professional).

23       The Commissioner argues the decision should be affirmed because the ALJ has cited to
24 other substantial evidence and because this is the intent of the Ninth Circuit's recent holding in
25 Woods, 32 F.4th 785.  Adopting the Commissioner's approach would allow ALJs to simply cite
26 evidence in support of a denial of benefits and ignore probative evidence supporting a claimant's
27 case; on appeal to a district court, such an interpretation would effectively eviscerate judicial
28 review.  Courts in the post-Woods landscape have not read the Ninth Circuit's command so

constrictively, and the undersigned is persuaded by these courts' rationales.  See, e.g., Timothy P. v. Comm'r, 2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("Although Woods made clear that the hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. . . It remains true that ALJs may not cherry-pick evidence in discounting a medical opinion.").

In sum, plaintiff contends she is unable to sit, stand, or walk as required to perform her past work as a hairdresser.  Given how the condition of plaintiff's spine affects the analysis at step three or (more likely here) the formulation of the RFC, the court finds error in the ALJ's conclusory rationale.  The Commissioner is correct that it is the duty of the ALJ to weigh the evidence in making a disability determination, and so a remand for further consideration is the appropriate remedy here.

In her briefing, plaintiff raises similar arguments regarding the ALJ's treatment of her shoulder impairment, an issue the undersigned has refrained from commenting on only for judicial efficiency.  The ALJ would be wise to solicit an updated medical opinion after an examination on all of plaintiff's physical conditions before issuing another decision.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (noting that "ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry"); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented).

**B. Plaintiff's Symptom Testimony and The Title II/XVI Issue**

Given that the case is being remanded for the ALJ to consider the effect of the probative evidence in support of plaintiff's case, the court refrains from commenting on the ALJ's resolution of plaintiff's subjective symptom testimony.  The ALJ may reconsider any aspect of plaintiff's testimony as is needed to resolve whether plaintiff meets any listing or requires an altered RFC, and whether any such RFC affects plaintiff's ability to work.

Additionally, it is not completely clear why the Commissioner has ignored plaintiff's request for benefits under both Titles II and XVI, and no argument on the matter was offered in briefing.  (See ECF No. 17.)  Plaintiff is correct that she appears to have initially sought benefits

under both Titles, but it seems that from the start the Commissioner only processed her case under Title XVI.  (See (See AT 167-68 (plaintiff's initial application); AT 60 and 71 (box checked for Title XVI only); AT 15 (ALJ's note that plaintiff applied for supplemental security income only).)  Plaintiff herself may have conceded this issue, as it does not appear she raised the omission of a Title II claim with the Commissioner at any point before she filed her opening brief with this court.  (See, e.g., AT 239 (plaintiff's representative briefing to the ALJ before the hearing, stating plaintiff "originally applied for Title XVI benefits" only); but see AT 72-73 (in a filing made just before the hearing, plaintiff's representative's checking the boxes and identifying both Titles II and XVI ).)  On remand, the Commissioner shall consider whether plaintiff's application proceeds under both Titles or just under Title XVI; the Commissioner shall provide an explanation for its decision either way.

## V.     CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
2. The Commissioner's cross-motion (ECF No. 17) is DENIED;
3. The final decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings in line with the court's order; and
4. The Clerk of Court is directed to CLOSE this case.

Dated:  August 8, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

osto.1438